ALAN M. KAUFMAN, ESQ. CSB: 57449
KAUFMAN & KAUFMAN
220 Montgomery Street, Suite 966
San Francisco, California 94104
Telephone: (415) 956-7770
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOHAMMAD ALI )  CASE NO.
            )
    Plaintiff, )
            )  CV 08 1731
    vs.     )
            )  COMPLAINT FOR DECLARATORY
EMILIO T. GONZALEZ, Director, U. S. )  JUDGMENT AND INJUNCTION
Citizenship and Immigration Services, )
            )
    Defendant. )
            )

Plaintiff alleges:

1. This action is brought pursuant to the provisions of 28 U.S.C. § 1331 and 5 U.S.C. §§701 - 706.

2. Defendant is the Director of the United States Citizenship and Immigration Services, (U.S. CIS), an agency of the United States as defined by 5 U.S.C. §701(b)(1), charged with the duty to administer and enforce the Immigration and Nationality Act (INA), including the adjudication of applications to adjust status filed by aliens pursuant to INA §209(b), 8 U.S.C. §1159(b).

3. Plaintiff is a citizen and national of Pakistan who was granted asylum on August 27, 2001 by U.S. CIS' predecessor, U.S. Immigration and Naturalization Service (INS) (Exhibit A).

4. On January 13, 2003 Plaintiff filed an application to adjust status with INS under INA §209(b) (Exhibit B).

5. On February 20, 2008 Defendant unlawfully denied Plaintiff's application to

Complaint for Declaratory Judgment and Injunction

1

1  adjust status (Exhibit C).

2      6.    Under 8 C.F.R. 209.2(f) no appeal shall lie from the denial of an application to adjust status under INA §209(b) but such denial will be without prejudice to the alien's right to renew the application in removal proceedings under INA §240, 8 U.S.C. 1229a.

    7.    There is a real and actual controversy between the parties. Plaintiff has no adequate remedy at law because he is not removable from the United States. Plaintiff has suffered and continues to suffer irreparable injury as a result of Defendant's unlawful denial of his application to adjust status.

WHEREFORE, plaintiffs prays judgment.

1. Declaring that Defendant's denial of Plaintiff's application to adjust status was unlawful;

2. Enjoining Defendant to approve Plaintiff's application to adjust status;

3. Awarding plaintiff costs and reasonable attorney fees incurred in this action; and

4. Granting such other and further relief as may be appropriate.

Date: March 28, 2008

Respectfully submitted.

_____
ALAN M. KAUFMAN
Attorney For Plaintiff

Complaint for Declaratory Judgment and Injunction



**U.S. Department of Justice**

Immigration and Naturalization Service
San Francisco Asylum Office
PO Box 77530
San Francisco, CA 94107

Date: 2 7 AUG 2001

A78 371 603

Mohammad Ali
1168 Baywood Drive #12
Petaluma, CA 94954

### Asylum Approval

Dear Mr. Ali:

This letter refers to your request for asylum in the United States filed on Form I-589.

It has been determined that you are eligible for asylum in the United States. Attached please find a completed Form I-94, Arrival Departure Record, indicating that you have been granted asylum status in the United States pursuant to §208(a) of the Immigration and Nationality Act (INA) as of **July 19, 2001**. You have been granted asylum in the United States for an indefinite period. This grant of asylum includes your dependents listed above who are present in the United States, were included in your asylum application, and for whom you have established a qualifying relationship by a preponderance of evidence.

In order to request derivative asylum status for any spouse or child who was not included in your asylum request, you must submit a Form I-730, Refugee and Asylee Relative Petition, to the Immigration and Naturalization Service (INS).

You are eligible for employment authorization for as long as you remain in asylum status. Your dependents listed above are also eligible for employment authorization, so long as they retain derivative asylum status. However, you must apply for and obtain an Employment Authorization Document (EAD) as evidence of your eligibility to work in the United States. To obtain an EAD, you must submit to the INS a Form I-765, Application for Employment Authorization. We recommend that you include a copy of this letter when applying for work authorization as an asylee.

If you plan to depart the United States, you must obtain permission to return to the United States before you leave this country. If you do not obtain permission, you may be unable to reenter the United States, or you may be placed in proceedings where you will be required to establish your asylum status. You may apply for a Refugee Travel Document on a Form I-131, Application for Travel Document.

EXHIBIT A

U.S. Department of Justice
Immigration and Naturalization Service

**Notice of Action**

# THE UNITED STATES OF AMERICA

| | | | |
|---|---|---|---|
| **RECEIPT NUMBER** LIN-03-080-51864 | | **CASE TYPE** I485 APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS | |
| **RECEIVED DATE** January 13, 2003 | **PRIORITY DATE** | **APPLICANT** A78 371 603 ALI, MOHAMMAD | |
| **NOTICE DATE** January 13, 2003 | **PAGE** 1 of 1 | | |

MOHAMMAD ALI
1132 BAYWOOD DRIVE APT 69
PETALUMA CA 94954

Notice Type: Receipt Notice

Amount received: $ 305.00

Section: Asylee adjustment

The above application or petition has been received. It usually takes 450 to 480 days from the date of this receipt for us to process this type of case. Please notify us immediately if any of the above information is incorrect.

We will send you a written notice as soon as we make a decision on this case. You can also use the phone number 402-323-7830 to obtain case status information directly from our automated system 24 hours a day with a touch-tone phone and the receipt number for this case (at the top of this notice).

If you have other questions about possible immigration benefits and services, filing information, or Immigration and Naturalization Service forms, please call the INS National Customer Service Center (NCSC) at **1-800-375-5283**. If you are hearing impaired, please call our TDD at **1-800-767-1833**.

If you have access to the Internet, you can also visit the INS at **www.ins.usdoj.gov**. Here you can find valuable information about forms and filing instructions, and about general immigration services and benefits. At present, this site does not provide case status information.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
NEBRASKA SERVICE CENTER
U. S. IMMIG. & NATZ. SERVICE
P.O. BOX 82521
LINCOLN NE 68501-2521
**Customer Service Telephone: 402-323-7830**



Form I-797C (Rev. 09/07/93) N

EXHIBIT B

U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521



U.S. Citizenship
and Immigration
Services

February 20, 2008

Refer To File No. LIN0308051864

A078371603

MOHAMMAD ALI
910 BAYWOOD DR
PETALUMA CA 94954

Dear Sir or Madam:

RE: Form: I485 APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS
    Beneficiary:    ALI, MOHAMMAD

### Decision

This notice refers to your Form I-485, Application to Register Permanent Residence or Adjust Status, filed with this office on January 13, 2003. You are requesting adjustment of status under Section 209(b) of the Immigration and Nationality Act (INA) (Title 8, United States Code, Section 1159).

Section 209(b) of the INA states:

The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—
  (1) applies for such adjustment,
  (2) has been physically present in the United States for at least one year after being granted asylum,
  (3) continues to be a refugee within the meaning of section 101(a)(42)(A) or a spouse or child of such a refugee,
  (4) is not firmly resettled in any foreign country, and
  (5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of examination for adjustment of such alien.

Matter of K-A-, 23 I & N Dec. 661, 666 (BIA 2004) (relief under section 209(b) of the INA is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities).

Section 212(a)(3)(B) of the INA, as amended by the REAL ID Act of 2005, describes an alien who is inadmissible and states in pertinent part:

(i) In general. Any alien who-
  (I) has engaged in a terrorist activity,
  (II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));
  (III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

Nebraska Service Center                                                                    www.uscis.gov

EXHIBIT C

(IV) is a representative (as defined in clause (v)) of--
   (aa) a terrorist organization (as defined in clause (vi)); or
   (bb) a political, social, or other group that endorses or espouses terrorist activity;
(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);
(VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;
(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;
(VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18, United States Code) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or
(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible.

(iii) Terrorist activity defined. As used in this Act, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:
   (I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).
   (II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.
   (III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.
   (IV) An assassination.
   (V) The use of any-
      (a) biological agent, chemical agent, or nuclear weapon or device, or
      (b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.
   (VI) A threat, attempt, or conspiracy to do any of the foregoing.

(iv) Engage in terrorist activity defined. As used in this chapter, the term "engage in terrorist activity" means, in an individual capacity or as a member of an organization-
   (I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;
   (II) to prepare or plan a terrorist activity;
   (III) to gather information on potential targets for terrorist activity;
   (IV) to solicit funds or other things of value for--
      (aa) a terrorist activity;
      (bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or
      (cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;
   (V) to solicit any individual--
      (aa) to engage in conduct otherwise described in this subsection;
      (bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or
      (cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or
   (VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a

safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training--

    (aa) for the commission of a terrorist activity;

    (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;

    (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

    (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

(v) Representative defined. As used in this paragraph, the term "representative" includes an officer, official, or spokesman of an organization, and any person who directs, counsels, commands, or induces an organization or its members to engage in terrorist activity.

(vi) Terrorist organization defined. As used in clause (i)(VI) and clause (iv), the term 'terrorist organization' means an organization--

    (I) designated under section 219;

    (II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

    (III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

A review of the record reveals that you donated and collected funds for Muhajir Qaumi Movement (MQM) in Pakistan.

Information about the formation and activities of Mohajir Quomi Movement (MQM), Mohajir Quomi Movement Haqiq (MQM-H), and Muttahida Quomi Mahaz (MQM-A) were taken from the Memorial Institute for the Prevention of Terrorism (MIPT) and The Institute for Conflict Management.

The MIPT is a non-profit organization dedicated to preventing terrorism on U.S. soil or mitigating its effects. MIPT was established after the April 1995 bombing of the Murrah federal building in Oklahoma City, and it is funded through the Department of Homeland Security's Office of Grants and Training (G&T). According to public information on www.tkb.org, "In 2001, the MQM detonated a series of explosive devices in Karachi to protest a water shortage in the city."

The Institute for Conflict Management is a non-Profit Society set up in 1997 in New Delhi, and is committed to the continuous evaluation and resolution of problems of internal security in South Asia. The Institute was set up on the initiative of, and is presently headed by, it's President, Mr. K. P. S. Gill IPS (Retd). The core areas of research on which the Institute focuses include: Continuous appraisal of internal security and the state's responses in all areas of existing or emerging conflict in South Asia; Planning for Development and Security in India's Northeast; Administrative Reforms for Restoration of Effective Civil Governance in Terrorism Affected Areas; Emerging Internal Security Challenges in South Asia; Judicial, Legal and Legislative Reforms in Terrorism Affected Areas and areas of widespread civil disorders; Evolution and Dynamics of the Underground Terrorist Economy and its Disruption; Identification and Evaluation of the Impact of Emerging Technologies for Terrorism and Counter terrorism; Emergency Response Codes and Protocols in Terrorism Affected Areas, Security Parameters and Procedures for Installations and Establishments Under Threat of Terrorist Attack, the 'Peace Dividend' and the Reconstruction of Societies affected by widespread collective violence, Impact of Terrorism on Child Victims, etc. The Institute is a registered non-profit, non-governmental organization

Receipt Number: LIN0308051864                        Page 4

supported by voluntary contributions and project aid. The Institute has provided consultancy services on terrorism & internal security to a number of governments within India and abroad. According to public information on www.satp.org, "Originally formed as the Mohajir Quomi Movement (MQM), it is now split into two factions. The faction led by the founder Altaf Hussain was renamed Muttahida Quomi Mahaz and is commonly referred to as MQM (A). A breakaway faction, created in 1992, retains the original name Mohajir Quomi Movement - with the suffix Haqiqi which means real - and is commonly referred to as MQM (H). The two factions have been responsible for several incidents of urban terrorism even as the MQM (A) participates in Pakistan's electoral process."

According to information found in the aforementioned sources, the actions and activities of MQM, MQH-H and MQM-A meet the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). MQM, MQH-H and MQM-A engage in armed conflict with opponents including the government and police, detonation of explosive devices and random attacks against civilians. The violent activities of the MQM, MQH-H and MQM-A were not engaged in purely for monetary gain and match those described in section (iii) and 212(a)(3)(B)(iv).

Due to your previously cited actions for giving material support to a terrorist organization, you are inadmissible under INA Section 212(a)(3)(B)(i)(I).

Accordingly, your application must be and hereby is denied. The regulations do not provide for an appeal to this decision.


Sincerely,

*[signature]*

F. Gerard Heinauer
Director
NSC/DWC EX157


Nebraska Service Center                                                                         www.uscis.gov